UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RYAN L. AKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-CV-00375-SEP |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of Social Security, denying the application of Plaintiff Ryan Akins for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Because there is substantial evidence to support the decision denying benefits, the Court will affirm the Commissioner's denial of Plaintiff's application.

**I.    BACKGROUND**

On August 22, 2017, Plaintiff applied for DIB and SSI, alleging that he had been unable to work due to disability since February 24, 2017. (Tr. 12, 162). In his application, he alleged disability due to Type II diabetes, clinical obesity, depression, anxiety, neuropathy, dizziness resulting from Meniere's disease in both ears, and anger problems. (Tr. 229). His applications were initially denied on November 28, 2017. (Tr. 100). Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 106).

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in this case. No further action is needed for this action to continue. *See* 42 U.S.C. § 405(g) (last sentence).

Plaintiff, who was represented by counsel, testified at his hearing that he has headaches at least every other day and debilitating dizzy spells at least three or four times per week. (Tr. 46-49, 54-55). He further testified that his doctor has not prescribed any medication or suggested any other treatment for his headaches. (Tr. 49). He also testified and that he cannot stand to be around people, gets into frequent arguments, and hears voices of dead people, but has never sought treatment with a psychiatrist. (Tr. 52). He testified that while he lives alone, he does not do any of his own shopping, errands, or household chores, and that his mother does everything for him. (Tr. 52). He testified that on a normal day he sits around the house and watches television, looks at things on the internet, or cuts the grass. (Tr. 62-64). He also testified that he has a vehicle and can drive, but his mother usually drives him places. (Tr. 48). He further testified that the neuropathy in his hands resulted in him being unable to "grab" things, and that his hands were so numb that someone could "stick a dang knife in there" and he would not feel anything. (Tr. 58).

In his Adult Function Report, Plaintiff states that on a typical day he wakes up, has breakfast, showers, watches the news, drives to a gas station to buy cigarettes, eats lunch, watches television, or listens to music, has dinner, does the dishes, takes a walk with a cigarette and talks to neighbors, calls his mother on the telephone, and finally, goes to bed, where he has trouble sleeping. (Tr. 248, 254). He states that he does not require any assistance from others in order to use the toilet, bathe, shave, get dressed, or feed himself. (Tr. 248). He further states that he prepares his own meals, and generally prepares sandwiches, salads, franks and beans, and boxed dinners, and that his illnesses have had no effect on his cooking habits, as he never knew how to prepare any other types of food. (Tr. 249). He indicates that he is able to wash his dishes and mow his lawn. *Id*. He states that he is able to drive a car and that he leaves the house daily. (Tr. 250). He further indicates that he goes shopping once per week, to purchase groceries. *Id*.

In an opinion issued on July 17, 2019, the ALJ found Plaintiff was not disabled as defined in the Act. (Tr. 9-27). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 161). On January 14, 2020, the SSA's Appeals Council denied his Request for Review. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Acting Commissioner of the Social Security Administration.

As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties. The Court will address specific facts related to the issues raised by the parties as needed in the discussion below.

## II.  STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a);[2] *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the

---

[2] All references throughout this opinion are to the version of the regulations that was in effect as of the date of the ALJ's decision.

3

Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" (RFC), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if he cannot make such an adjustment, he will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, February 24, 2017; that Plaintiff has the severe impairments of diabetes mellitus, degenerative disc disease, clinical obesity, depression, anxiety, bilateral carpal tunnel syndrome with a history of left-sided release surgery, cubital tunnel syndrome of the right upper extremity, and peripheral neuropathy; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 14-18). The ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except that he can never climb ladders, ropes, or scaffolds; can never crawl; can only occasionally climb ramps and stairs or balance, kneel, stoop, and crouch; can only frequently, rather than constantly, reach, handle, and finger; he should

avoid concentrated exposure to wetness, humidity, vibration, pulmonary irritants, extreme heat and cold; he should avoid all exposure to workplace hazards such as moving machinery and unprotected heights; and he is limited to simple, routine, repetitive tasks with job responsibilities that do not require public interaction, and can have only occasional contact with co-workers, with no tandem tasks.  (Tr. 18).

The ALJ found that Plaintiff is unable to perform any of his past relevant work.  (Tr. 25).  But considering Plaintiff's age, education, and work experience, and in reliance on the testimony of a vocational expert (VE), the ALJ found that Plaintiff would be able to perform occupations including optical goods assembler (Dictionary of Occupational Titles (DOT) No. 713.687-026, sedentary exertion level, 200,000 jobs in the national economy), and machine tender, or "stuffer" of toys or sports equipment (DOT No. 731.685-014, sedentary exertion level, 75,000 jobs in the national economy).  (Tr. 26-27).  The ALJ concluded that Plaintiff was not disabled, as defined in the Act, from the alleged onset date through May 15, 2019, the date of the decision.  (Tr. 27).

**IV.    STANDARD FOR JUDICIAL REVIEW**

This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942.  *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means— and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012).  However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good

reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V.   DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ failed to develop the record by obtaining more information about Plaintiff's ability to handle and finger; and, because of this deficiency (2) the ALJ reached a flawed RFC that was unsupported by substantial evidence. Because these two issues are closely intertwined, the Court will address them together in its discussion below.

### A.   RFC Evaluation:  Plaintiff's Ability to Frequently Reach, Handle, and Finger

A disability claimant has the burden to establish his RFC. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). A claimant's RFC is "the most a claimant can do despite his limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). It is the ALJ's responsibility to determine a claimant's RFC "based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); *see also Pemberton v. Saul*, 953 F.3d 514, 517 (8th Cir. 2020) ("Medical records, physician observation, and the claimant's subjective statements about his capabilities may be used to support the RFC**."** ). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). However, "there is no requirement that an RFC finding be supported by a specific medical opinion" or any opinion at all. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

"The interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). Nevertheless, "the ALJ cannot 'play doctor,' meaning that the ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for his own." *Adamczyk v. Saul*, 817 Fed. App'x. 287, 289-90 (8th Cir. 2020) (unpublished). Finally, "[e]ven though the RFC assessment draws from medical sources for

6

support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

As set forth previously, in this case, the ALJ reviewed Plaintiff's testimony and medical records, examined the consistency of his subjective complaints with the evidence of record, analyzed the medical opinions in the record, and found that Plaintiff had the following RFC:

> [T]o perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except that he can never climb ladders, ropes, or scaffolds; can never crawl; can only occasionally climb ramps and stairs or balance, kneel, stoop, and crouch; can only frequently, rather than constantly, reach, handle, and finger; he should avoid concentrated exposure to wetness, humidity, vibration, pulmonary irritants, extreme heat and cold; he should avoid all exposure to workplace hazards such as moving machinery and unprotected heights; and he is limited to simple, routine, repetitive tasks with job responsibilities that do not require public interaction, and can have only occasional contact with co-workers, with no tandem tasks.

(Tr. 18). In reaching his decision, the ALJ considered, but was not wholly persuaded by, the opinion of the state agency medical expert, Dr. Joann Mace, who conducted a consultative examination of Plaintiff on November 9, 2017, and concluded that while Plaintiff had neuropathy in both hands, his manual "discrimination . . . and fine manual motor dexterity was intact [and] [g]rip strength was . . . 5/5." (Tr. 81). She further opined that Plaintiff had no limitations whatsoever in reaching, handling, or fingering. *Id*. Dr. Mace went on to opine that Plaintiff's condition resulted in "some limitations" in his ability to perform work related activities but was not severe enough to keep him from working and that his impairments would limit Plaintiff to no more than "light" work. (Tr. 83). The ALJ noted that, while Dr. Mace provided a narrative explanation to support her conclusions that the Plaintiff had no limitations in handling or fingering, "the claimant was diagnosed with bilateral carpal tunnel syndrome and right-sided cubital tunnel syndrome in 2018, several months after Dr. Mace had the opportunity to review the evidence of record." (Tr. 24). Therefore, the ALJ concluded, "the evidence as a whole supports a conclusion that the claimant could reach, handle, and finger on a frequent basis during the relevant period, rather than constantly." *Id*.

Plaintiff contends that because Dr. Mace's examination was conducted prior to his official diagnosis with carpal tunnel syndrome and cubital tunnel syndrome, the ALJ should have ordered a more recent consultative examination to address the limitations that developed since Dr. Mace's examination in 2017. Plaintiff alleges that the evidence of record after 2017 supports

7

greater limitations in handling and fingering than the ALJ included in the RFC, and a more recent consultative examination was required to address whether he was capable of only "occasional" as opposed to "frequent" handling and fingering.[3]  More specifically, the Plaintiff contends that the ALJ impermissibly "played doctor" in concluding that Plaintiff was capable of frequent handling and fingering, and the ALJ committed reversible error in failing to expand the record with an updated medical opinion that may have supported Plaintiff's argument.

Based on a careful review of the record, the Court finds that the ALJ's determination that Plaintiff had the RFC to perform sedentary work with several additional limitations, including frequent handling and fingering, was supported by substantial evidence, including medical evidence, addressing Plaintiff's ability to function in the workplace.  The Court also finds that the ALJ did not impermissibly "play doctor" in making the RFC finding, but properly determined the RFC based on all of the evidence.  The Court further finds that the ALJ was under no obligation to expand the record with an updated medical opinion regarding Plaintiff's capabilities.

The Court notes that this is not a case in which the ALJ made an RFC finding in the absence of any medical evidence.  First, as noted above, the ALJ considered the November 2017 findings of the state agency medical consultant, Dr. Mace, but was not persuaded by her findings, as the ALJ knew that her 2017 opinion could not account for Plaintiff's 2018 diagnoses of carpal and cubital tunnel syndromes.  The ALJ was aware of the additional limitations resulting from these impairments, which were supported by substantial medical evidence of record, and he accounted for these additional limitations when crafting Plaintiff's RFC.  While Dr. Mace opined that Plaintiff was capable of constant handling and fingering, the ALJ concluded that, due to the further limitations imposed by his new diagnoses, he was capable of only frequent handling and fingering.

In addition, the ALJ's determination that a sedentary RFC with additional limitations adequately accounts for Plaintiff's impairments is supported by other evidence of record.  The ALJ considered medical treatment records, physician observations, and the claimant's subjective statements about his capabilities, all of which supported the RFC.

---

[3] "Frequent" handling, fingering and reaching means occurring from one-third to two-thirds of the time, while "occasionally" means occurring from very little up to one-third of the time.  *See* SSR 83-10 (S.S.A. 1983), Titles II & XVI:  Determining Capability to Do Other Work-the Medical Vocational Rules of Appendix 2.

First, the RFC assessment is supported by numerous relevant normal or mild objective medical findings in the record. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding RFC finding that was based on largely mild or normal objective findings). The ALJ reasonably considered the absence of objective examination findings to support Plaintiff's complaints, noting that although Plaintiff certainly experienced some numbness, tingling, and decreased sensation in his extremities, examination findings, as further discussed below, were otherwise largely normal.

During the relevant time period, Plaintiff's primary care physician was Dr. Briccio S. Cadiz. His treatment notes, while noting some decreased sensation and objective signs of carpal and cubital tunnel syndromes, are otherwise largely unremarkable. For example, Dr. Cadiz's treatment notes on June 1, 2017, indicate that Plaintiff had symmetric strength and reflexes in all extremities (Tr. 329); on February 24, 2017, Plaintiff had "normal" sensations with symmetric strength and reflexes in all extremities (Tr. 332); on May 26, 2017, Plaintiff was noted to have normal and symmetric strength and reflexes in all extremities, but with some decreased sensation in his fingers and feet (Tr. 475); on September 1, 2017, Plaintiff was observed to have a positive Tinel's sign, but also exhibited full "5/5" motor function in his extremities (Tr. 472); on February 1, 2018, Plaintiff had normal sensations and strength in both hands, with symmetric strength and reflexes in all extremities (Tr. 469); on May 3, 2018, the week before his carpal tunnel surgery on his left wrist, Plaintiff was found to have symmetric strength and reflexes in all extremities, but with some lack of sensation in his left hand (Tr. 466); on August 9, 2018, after his surgery, Plaintiff was noted to have some swelling remaining in his left wrist, and had difficulty making a full fist with his left hand, but otherwise had normal sensations and strength in all extremities, with symmetric strength and reflexes (Tr. 464); on November 15, 2018, Plaintiff was noted to have no abnormalities of any kind in his extremities, and he exhibited normal strength and sensation with symmetric strength and reflexes in his upper extremities (Tr. 460); and finally, on February 12, 2019, Plaintiff was noted to have normal sensation in all extremities, with symmetric strength and reflexes (Tr. 457). Additionally, Dr. Cadiz submitted an opinion regarding Plaintiff's limitations, in which he opined that Plaintiff was capable of "frequent" handling and fingering with both upper extremities. (Tr. 316).

The record contains multiple similarly normal or largely unremarkable objective medical findings by other health care providers at various times throughout the relevant period. For example, treatment notes from an examination by Dr. Anthony Newell on November 9, 2017, indicated that Plaintiff had "intact" muscle tone in all extremities, with full "5/5" motor strength bilaterally in wrist flexion, wrist extension, finger abduction, and grip strength (Tr. 364). The examination notes further indicated that Plaintiff did not exhibit any limitations or restrictions in his ability to lift and carry, his "digit-to-digit testing" was "accomplished without difficulty or dyscoordination," and his "fine manual motor dexterity [was] intact" (Tr. 364); Plaintiff was able to make a fist, fully extend his hands, and oppose his fingers normally with both hands (Tr. 365); and Plaintiff had "no sensory deficits to light touch using the filament except for bilateral feet and hands," and both his gross and fine manual motor dexterity was intact and he was able to handle objects normally with both hands. (Tr. 363, 368).

Plaintiff was also examined by Dr. John D. McGarry on March 14, 2018. The examination notes from Plaintiff's appointment with Dr. McGarry indicate that while Plaintiff had some decreased sensation in his mid-forearms, he also had normal muscle tone and strength, with normal coordination during finger-to-nose testing, as well as during testing for rapid alternating movements. (Tr. 483).

Plaintiff saw Dr. William Kennan on March 16, 2018, for evaluation of pain, numbness, and tingling in his hands. (Tr. 22, 371-78). Examination notes from that visit indicated that Plaintiff had a negative Allen's test and negative Tinel's sign and positive Phalen's sign for his right wrist, with some weakness upon abduction of his thumb, and weakness with pinch. *Id*. For Plaintiff's left wrist, he showed a negative Allen's test, with positive Tinel's and Phalen's sign, plus weakness of abduction of thumb and weakness of pinch. (Tr. 378). Dr. Kennan diagnosed Plaintiff with moderately severe carpal tunnel syndrome on his left extremity, and he performed left carpal tunnel release surgery on Plaintiff on May 10, 2018. (Tr. 22, 404, 421-22). At his follow-up visit on May 23, 2018, Plaintiff reported that his numbness/tingling were "about the same compared to before surgery." (Tr. 409). Upon examination, Plaintiff was found to have full range of motion in the fingers of both hands. (Tr. 413).

Additionally, there is no merit to Plaintiff's argument that the ALJ committed reversible error when he failed to supplement the record with an updated medical opinion to support the RFC assessment. First, an ALJ may adopt a state agency consultant's opinion even if it was

10

made before the record was fully developed. *See Kohn v. Colvin*, 2013 WL 5375415, at *13 (N.D. Iowa Sept. 26, 2013) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). Additionally, while Plaintiff is correct that, given the non-adversarial nature of social security hearings, ALJs have a duty to fully and fairly develop the record, the ALJ did not breach that duty in this matter. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). The failure to seek an updated opinion was not erroneous in this case, as "there is no requirement that an RFC finding be supported by a specific medical opinion," or indeed, any medical opinion at all. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). This is because the RFC is an "administrative assessment," not a medical one, and therefore, "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). The ALJ had no obligation to obtain an updated opinion, and the failure to do so is without legal significance in this matter.

In sum, the Court finds that the ALJ conducted a proper analysis of Plaintiff's RFC. The ALJ did not impermissibly "play doctor," but properly considered the objective evidence along with medical opinion evidence in coming to an RFC assessment. The Court concludes that the RFC is supported by substantial evidence in the record.

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion. However, the applicable standard of review is not whether substantial evidence of record may support contrary findings, but rather, whether substantial evidence supports the ALJ's findings. *See England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007) ("If substantial evidence supports the decision, we will not reverse, even if substantial evidence could have been marshaled in support of a different outcome."). This Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## VI. CONCLUSION

Having reviewed the entire record, the Court finds that the ALJ considered the medical evidence as a whole and made a proper RFC determination based on a fully and fairly developed record. Consequently, for all of the foregoing reasons, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Dated this 30th day of September, 2021.

*Sarah E. Pitlyk*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE